IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE, TENNESSEE

| | | |
|---|---|---|
| United States of America, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | Case No. 3: 08-cr-143 |
| | : | |
| Donald Ray Reynolds, Jr., | : | **Testimony of Danielle Barto** |
| and Nathaniel Smith, Jr., | : | **on May 13th, 2009** |
| | : | |
| Defendants. | : | |

Transcript of proceedings before the Honorable Dennis H. Inman, U. S. Magistrate Judge, on May 13th, 2009.

Appearances:

On behalf of the Plaintiff:

Tracee Plowell, Esq.
D. Gregory Weddle, Esq.
U. S. Attorney's Office
Knoxville, Tennessee

On behalf of Deft. Reynolds:          On behalf of Deft. Smith:

John E. Eldridge, Esq.                Donny M. Young, Esq.
Knoxville, Tennessee                  Knoxville, Tennessee

Court Reporter:

Donnetta Kocuba, RMR
800 Market Street, Suite 132
Knoxville, Tennessee 37902
(865) 524-4590

# I N D E X

| Plaintiff's Witness: | Direct | Cross | Redirect | Recross |
|---|---|---|---|---|
| Danielle Barto | 3 | 4 | – | – |

– – –

1  (Following is the sworn testimony of Danielle Barto from the
2  motion hearing on May 13th, 2009:)
3              MS. PLOWELL:   United States is calling Agent
4  Danielle Barto, B-a-r-to.
5              THE COURT:   B-a-r-t-o, Danielle?
6              MS. PLOWELL:   Yes, your Honor.
7              COURTROOM DEPUTY:   Raise your right hand,
8  please. Do you solemnly swear or affirm that the testimony that
9  you're about to give in this matter now before this court will be the
10 truth, the whole truth and nothing but the truth, so help you God?
11             MS. BARTO:   I do.
12                       DIRECT EXAMINATION
13 by Ms. Plowell:
14 Q.   Agent, please give your name and your occupation for the
15 Court.
16 A.   Danielle Barto. I'm a special agent with the Internal Revenue
17 Service, criminal investigation.
18 Q.   As part of your duties as a special agent in the IRS-CID, did
19 you have the occasion to assist in the criminal investigation of
20 Donald Reynolds in the fall of 2007?
21 A.   I did.
22 Q.   Tell the Court what you did to assist in the investigation.
23 A.   I assisted in many aspects of the investigation, but one of the
24 aspects that I participated in was collecting trash from the
25 residence of Mr. Reynolds.

1  Q.   And what specifically did you collect the trash from?
2  A.   I collected it from the trash vendor, after he collected it from
3  Mr. Reynold's residence.
4  Q.   Is that the residence on Alameda in Knoxville?
5  A.   Yes.
6          THE COURT:   You got the trash from the trash man?
7          THE WITNESS:   From the trash man, yes, sir.
8          THE COURT:   Cross-examine.
9  By Mr. Eldridge:
10 Q.   Ms. Barto, are you telling us that you got– what did you
11 obtain from the trash man?
12 A.   The trash man collected the trash from the residence located
13 on Alameda and delivered it to me up the street.  He handed me the
14 trash bags that were collected from the residence.
15 Q.   Was it a singular trash bag?
16 A.   On occasion it was one bag; on occasion it was more than one
17 bag.
18 Q.   So am I to understand that you had a prior conversation with
19 the trash collector and asked him to pick up trash for you?
20 A.   Yes, sir.
21 Q.   And did you point out to him which trash receptacle you
22 wanted it from?
23 A.   The initial contact I had with the trash– trash man, I told him
24 the address and I described the vehicle that was in the driveway.
25 Q.   What was the man's name?

1   A.   I do not know.
2   Q.   Do you know where Mr. Reynolds' house is?
3   A.   Yes, sir.
4   Q.   And you know there's a driveway on the left side of the
5   house?
6   A.   Correct.
7   Q.   And you know that there is a house to the left of him?
8   A.   Yes, sir.
9   Q.   And there is a driveway to the right side of that house?
10  A.   Yes, sir.
11  Q.   Which puts both driveways in fair proximity to one another,
12  doesn't it?
13  A.   Yes, sir.
14          THE COURT:   Now, I think we've ranged into another
15  issue here about whether or not they got the right trash.  You can
16  take that up at trial.  The issue here is the seizure of the trash vis-a-
17  vis the probable cause in the warrant, so the expectation issue,
18  expectation of privacy issue, is the only issue we've got that's of
19  any interest to me at all.
20          So have you got any more questions about her–
21  Q.   On how many occasions did you retrieve– did you ask for the
22  cooperation of this employee of the city or county?
23  A.   I don't have a specific number.  I would average over a dozen.
24  Q.   Over a period of time?
25  A.   Yes, sir.

1  Q.   Did you see that employee garbage collector actually take that
2  particular bag out of a particular can?
3  A.   No, sir.
4         MS. PLOWELL:   Objection, your Honor.
5         THE COURT:   Sustained.  That's for trial, Mr.
6  Eldridge.  If you want to grill her on that, I'm sure Judge Varlan
7  will let you have at it.
8  Q.   Did you see where the trash can was?
9         MS. PLOWELL:   Continue to object, your Honor.
10        THE COURT:   Yeah, that's all, that's as far as we're
11 going, Mr. Eldridge.  We've got how she seized the trash can.  She
12 didn't crawl in through his kitchen window and take it out from
13 under the sink; she got it from the trash man.
14        MR. ELDRIDGE:   But we don't know where the trash
15 man got it.
16        THE COURT:   Well, that's got nothing to do with the
17 issue of expectation of privacy.
18        MR. ELDRIDGE:   Very well, your Honor.
19        THE COURT:   Thank you, agent.
20     (Witness excused.)

### C E R T I F I C A T I O N

I certify that the foregoing is an accurate transcript of the record of proceedings in the titled matter.

   */s/ Donnetta Kocuba*                                  2/4/10

Donnetta Kocuba, RPR-RMR
Official Court Reporter
U.S. District Court - Knoxville, Tennessee