## UNITED STATES DISTRICT COURT

_____EASTERN_____ DISTRICT OF _____TENNESSEE_____

In the matter of the Seizure of a 2006 Dodge 300C,
VIN # 2C3KA73W76H498298, registered to Donald
R. Reynolds, Sr.

**APPLICATION AND AFFIDAVIT
FOR SEIZURE WARRANT**

CASE NUMBER: 3:08-MJ-1059

I, Brian D. Grove, being duly sworn depose and say:

I am a Special Agent of the Criminal Investigation Division of the Internal Revenue Service (IRS-CID) and have reason to believe that in the Eastern District of Tennessee there is now certain property which is subject to forfeiture to the United States, namely a 2006 Dodge 300C, VIN # 2C3KA73W76H498298, registered to Donald R. Reynolds, Sr., which was used, and intended to be used, to commit and to facilitate the commission of a violation of Title 21, United States Code, Sections 841 and 846, or constitutes and is derived from any proceeds obtained, directly and indirectly, as the result of said violation, and is subject to forfeiture pursuant to Title 21, United States Code, Section 853, and, was either involved in a money laundering transaction, or traceable to such property as a result of a violation of Title 18, United States Code, Sections 1956(h) and 1957, conspiracy to commit money laundering, and is subject to forfeiture pursuant to Title 18, United States Code, Section 982(a)(1) and (b), which incorporates by reference Title 21, United States Code, Section 853.

I believe that the United States is authorized to seize the personal property to assure its availability for forfeiture and that an order under Title 21, United States Code, Section 853(e) will not be sufficient to assure the availability of the property for forfeiture.

The facts to support the issuance of a Seizure Warrant are as follows:

(SEE ATTACHED AFFIDAVIT)

_____
Signature of Affiant

Sworn to before me, and subscribed in my presence,

_____4/18/08_____     at     _____Knoxville, Tennessee_____
Date                                          City and State

_C. Clifford Shirley_ United States Magistrate Judge          _____
Name and Title of Judicial Officer                                       Signature of Judicial Officer

**AFFIDAVIT**

I, Brian D. Grove, being duly sworn, depose and state as follows:

1.      I am a Special Agent with the Criminal Investigation Division of the Internal Revenue Service (IRS-CID) and have been so employed since August 1991. My responsibilities as a Special Agent include the investigation of possible criminal violations of the Internal Revenue Laws (Title 26, United States Code, Section 7201 et seg.), the Foreign Bank Secrecy Act (Title 31, United States Code § 5324 et seq.), the Money Laundering Control Act (Title 18, United States Code§§ 1956 and 1957), asset forfeiture (Title 18, United States Code §§ 981, 982 and 984), as well as drug related offenses pursuant to Title 21, United States Code §§ 841 et seq., as they relate to money laundering offenses.

## Professional Training and Experience of Affiant

2.      In 1991 and 1992, I attended 21 weeks of specialized training at the Federal Law Enforcement Training Center in Glynco, Georgia. This training focused on the various criminal violations investigated by IRS-CID Special Agents and included training on criminal statutes, constitutional law, investigative tools and techniques, and interviewing and debriefing of witnesses. In addition to this initial training, I have attended yearly continuing professional education training from IRS-CID dealing with tax and money laundering investigations, the Bank Secrecy Act, civil and criminal forfeiture, and other federal violations. I continually read various publications, articles, and training and reference materials that deal with both the investigative and legal aspects of investigations of money laundering, assets seizure and forfeiture, and narcotics.

3.      I have personally conducted or assisted in over 100 investigations of alleged criminal violations of the Internal Revenue laws, Foreign Bank Secrecy Act, and the Money Laundering

1

Control Act. These investigations focused on individuals who derived their income from legal sources as well as illegal sources, including the sale of cocaine and marijuana. As a result of these investigations, I have become familiar with the methods and techniques used by money launderers and narcotics traffickers to derive, launder, and conceal their profits, and to use these profits and their assets to promote and facilitate their unlawful activity. I have extensive experience analyzing various financial documents and bank records in an effort to track the flow of money and assets. I have conducted or participated in the execution of over 200 search and seizure warrants relating to investigations of violations of tax, money laundering, and controlled substances offenses. I personally assisted in writing or was the affiant on many of the affidavits written and used to obtain these search and seizure warrants. My participation in these investigations has resulted in the prosecution of numerous individuals as well as the seizure and forfeiture of millions of dollars and assets derived from illegal activity.

4.      I have been participating in the investigation of DONALD RAY REYNOLDS, JR. (REYNOLDS), and others, for the laundering of proceeds obtained from narcotics distribution, in violation of 18 U.S.C. §§ 1956 and 1957, and the distribution of, and conspiracy to, distribute controlled substances in violation of 21 U.S.C. §§ 841 and 846, as such offenses relate to money laundering transactions utilizing the proceeds of a specified unlawful activity, namely cocaine and marijuana trafficking. As set forth herein, REYNOLDS has used and is using drug proceeds to engage in financial transactions with the intent to promote and conceal his unlawful drug activity.

5.      This affidavit is submitted in support of applications seeking search warrants for the following locations:

2

a. The residence located at 10623 Alameda Drive, Knoxville, Tennessee 37932, and its curtilage and outbuildings, appurtenances, and attached and detached garages and vehicles and trailers located on such curtilage. This location is the current residence of REYNOLDS and his wife, Melanie;

b. The residence located at 1001 Crooked Springs Road, Knoxville, Tennessee 37932, and its curtilage and outbuildings, appurtenances, and attached and detached garages and vehicles and trailers located on such curtilage. This location is the current residence of REYNOLD'S parents, Donald and Janice Reynolds, and also the address of REYNOLDS business, Timeless Entertainment;

c. The safe deposit box (number ending xxxxxxx1882) located at Bank of America, Cedar Bluff Branch, 9375 Kingston Pike, Knoxville, Tennessee 37922.

6. The facts set out in this affidavit will show that there is probable cause to believe that evidence pertaining to REYNOLDS' laundering of proceeds obtained from narcotics distribution, in violation of 18 U.S.C. §§ 1956 and 1957, and/or the distribution of and conspiracy to distribute controlled substances in violation of 21 U.S.C. §§ 841 and 846, will be found at the premises listed above.

7. In addition, this affidavit is submitted in support of applications for seizure warrants for the following:

a. Bank of America business account (number ending xxxxxxxx1977), in the name Timeless Entertainments Inc.;

3

b.  A 2005 BMW, VIN# WBAEH73485B869007, bearing Tennessee tag AP-0462, registered to Donald R. REYNOLDS Jr., 1001 Crooked Springs Road, Knoxville, Tennessee, expiring on June 30, 2008;

c.  A 1996 Chevrolet, VIN# 1G1BL52P7TR194140, bearing Tennessee tag 81385H1, registered to "TIMELESS ENTER,TAINMENTS INC," 1001 Crooked Springs Road, Knoxville, Tennessee, expiring on December 31, 2008;

d.  A 2006 Yamaha motorcycle, VIN# JYARN15E66A001249, bearing Tennessee tag number 8920ZB, registered to Donald Ray REYNOLDS, 1001 Crooked Springs Road, Knoxville, Tennessee 37932, expiring on May 31, 2009;

e.  A 2006 Dodge 300C, VIN# 2C3KA73W76H498298, bearing Tennessee tag number 540RXM, registered to Donald R. Reynolds, Sr., 1001 Crooked Springs Road, Knoxville, Tennessee, expiring on December 31, 2008;

f.  A 2005 Dodge Charger, VIN# 2B3KA53H16H344267, bearing Tennessee tag number 386KJV, registered to "Timeless Ent I,nc," 10623 Alameda Drive, Knoxville, Tennessee.

8.  Based on the information developed during this investigation and set out in this affidavit, I have probable cause to believe that the items listed above are property, or are property traceable to property, that was involved in a financial transaction in order to promote or facilitate drug trafficking or that the property was involved in a financial transaction in an attempt to conceal and disguise the true ownership or source of the funds in violation of the money laundering provisions of 18 U.S.C. §§ 1956 and 1957, and is therefore forfeitable to the United States pursuant to 18 U.S.C. §§ 981(a), 982, and 984. In addition, I have probable cause to believe that the property

4

listed above constitutes property traceable to property derived from the proceeds obtained, directly or indirectly, as a result of felony violations of 21 U.S.C. §§ 841 and 846, and is therefore also forfeitable to the United States pursuant to 21 U.S.C. § 881(a)(6).

## Investigation

9. The Internal Revenue Service, Criminal Investigation Division (IRS), Drug Enforcement Administration (DEA), the High Intensity Drug Trafficking Area task force (HIDTA), and the United States Attorney for the Eastern District of Tennessee, have been conducting a criminal investigation into the drug trafficking and money laundering activities of REYNOLDS and others. The facts set forth herein show that REYNOLDS and others are involved in a conspiracy to transport and distribute hundred-pound quantities of marijuana and multi-kilogram quantities of cocaine, and are laundering drug proceeds in order to hide and disguise these proceeds from law enforcement officials and to promote and facilitate their drug trafficking activities.

### Cooperating Witness #1 (CW1)

10. On or about June 1, 2007, DEA was approached by a member of the REYNOLDS narcotics trafficking and money laundering organization who expressed interest in cooperating with law enforcement. The information obtained from CW1 has been corroborated through law enforcement investigation. Examples of some, but not all, of the methods used to corroborate CW1's information is set forth further in this affidavit. CW1 is a reliable informant and information provided by CW1 has been deemed accurate.

11. CW1 provided the following information: CW1 stated that he/she had observed REYNOLDS in possession of approximately 400 pounds of marijuana and 50-100 pounds of cocaine. CW1 knew REYNOLDS to be involved in drug trafficking for approximately ten years and

5

stated that REYNOLDS was currently in Arizona, possibly Tucson, receiving a shipment of drugs. CW1 stated that REYNOLDS made one or two trips per month to Arizona to receive cocaine and marijuana. REYNOLDS would travel from Knoxville, Tennessee to Nashville, Tennessee via rental cars, possibly utilizing Enterprise and/or National rental car services. After arriving in Nashville, REYNOLDS travels by airplane to Tucson, AZ where he rents a hotel room at various locations. After REYNOLDS obtains the drugs, they are shipped via Federal Express (Fed-Ex) to hotels where REYNOLDS and his associates retrieve the packages. CW1 stated that the drugs are then broken down into desired quantities at REYNOLDS' residence in Knoxville, Tennessee. CW1 also informed that REYNOLDS had associates in Chicago and in Memphis.

12.     CW1 provided cellular telephone numbers (602) 515-4773 and (323) 784-4981 as telephones that REYNOLDS utilizes to conduct his drug trafficking activities. CW1 knew REYNOLDS to frequently change telephones to avoid detection by law enforcement and that REYNOLDS also utilizes fake identification to purchase hotel rooms and other items to avoid detection by law enforcement.

13.     CW1 knew that one of REYNOLDS sources of supply was named "Tony." CW1 informed that Tony utilized cellular telephone number (601) 706-3141. CW1 believed Tony resided in Arizona and that REYNOLDS traveled to Arizona to visit Tony.

14.     CW1 further informed that REYNOLDS uses a used car dealer named "Albert" to purchase cars with drug proceeds. The cars are then sold to launder his profits. CW1 stated that he/she knew REYNOLDS uses his business, Timeless Entertainment, to conceal and disguise his drug trafficking activities and the proceeds of the drug trafficking activity.

6

15.     CW1 identified Nathaniel "Nugget" Smith, 2516 Linden Ave, Knoxville, Tennessee, as REYNOLDS' closest drug associate. The source stated one of Smith's cellular telephone numbers is (865) 951-6578. SMITH also utilizes a New Millennium Bank, pre-paid Master Card account (number ending xxxx-xxxx-xxxx-1860) to pay for rental cars and other expenses associated with REYNOLDS drug trafficking activities.

**Nathaniel "Nugget" Smith**

16.     On July 20, 2007, Nathaniel "Nugget" Smith, 2516 Linden Avenue, Knoxville, Tennessee, was arrested by the Chicago, Illinois Police Department for possession of approximately 12 pounds of marijuana. This arrest was the result of a controlled delivery of a Fed-Ex package sent from Arizona to a Comfort Inn hotel in metropolitan Chicago. Smith was arrested after retrieving the Fed-Ex package from the front desk of the hotel and placing it into a 2007 Cadillac Escalade, VIN #3GYFK62827G272799. This vehicle, purchased by REYNOLDS, will be discussed in greater detail later in this affidavit. Smith utilized the name Brian Donell Bradley during his stay at the Comfort Inn and to retrieve the Fed-Ex package. In a search incident to Smith's arrest, officers seized four (4) driver's licenses in four different names, all depicting Smith's picture. One of the driver's licenses obtained from Smith was a Florida license bearing the name of Brian Donell Bradley.

17.     In addition to the package described above, law enforcement personnel seized hotel receipts for a Marriott and Hampton Inn in Metropolitan Chicago and a piece of paper with an additional Fed-Ex tracking number from Smith. An electronic investigation by Fed-Ex confirmed that a package, also sent from Arizona, was delivered to a Marriott in Metropolitan Chicago, in the name of V. Jack, and was the same size and weight as the package delivered to the Comfort Inn.

7

Law enforcement personnel also recovered an Oregon driver's license in a search incident to Smith's arrest, bearing Smith's photo, with the name Vincent Jackson.

18. On June 16, 2008, your affiant surveilled Nathaniel Smith at REYNOLDS' residence located at 10623 Alameda Drive, Knoxville, Tennessee. Smith was observed outside of the residence speaking with REYNOLDS.

**Arizona**

19. Pursuant to a grand jury subpoena, Southwest Airlines provided airfare ticketing information and details for Donald R. REYNOLDS, Jr. According to the documents provided, REYNOLDS flew between Nashville, Tennessee and Phoenix, Arizona on approximately 67 flights between the beginning of 2005 and the end of 2007. In addition, these records show that REYNOLDS purchased flights for other individuals, known to your affiant to be involved in drug trafficking activity, to fly to Phoenix, Arizona, including Nathaniel Smith and CW1.

20. On March 6, 2008, the St. Louis Airport Drug Task Force arrested five (5) individuals, seized approximately 727 pounds of marijuana, and over $30,000 cash. One of the individuals arrested was Antonio Santa Cruz. In a search incident to the arrest of Cruz, officers recovered a Motorola cellular telephone with number (601) 706-3141, the same telephone number provided by CW1 above as the number for "Tony." Within the "contacts" of this telephone were several contacts including numbers (602) 515-4773 listed as "D2", and (323) 784-4981, listed as "D", both numbers provided by CW1 as being numbers utilized by REYNOLDS to conduct his drug trafficking activities. In addition, a contact within the telephone was (865) 692-7694, listed as "Nugget."

8

### 10623 Alameda Drive, Knoxville, Tennessee

21.     On November 19, 2007 and December 10, 2007, your affiant removed the trash from the trash receptacle left on the curb at 10623 Alameda Drive, Knoxville, Tennessee. During the inspection of the trash I found wrapping materials consisting of heat sealed clear plastic, packing tape, with grease and coffee grounds residue contained within, one of which maintained the form of what your affiant knows based on his training and experience, to be the size and shape of one kilogram of cocaine. Your affiant knows based upon my training and experience that heat sealed plastic and packing tape containing grease and coffee grounds are utilized by cocaine traffickers to conceal the scent of the cocaine from narcotics detecting canines during the transportation of the narcotics.

22.     In addition to the cocaine packaging, your affiant found evidence i.e., packaging materials, that REYNOLDS has recently purchased a large, keypad style gun safe. Additionally, your affiant has found paperwork that reveals REYNOLDS has purchased or received large, high-priced weapons. Based on my experience in other investigations, your affiant knows that this safe cannot be opened by a locksmith on the premises. Your affiant has dealt with manufactures of this style of safe on numerous occasions and knows that by utilizing the serial number on the safe, you can obtain a default keypad code and a master key within 24 hours. It is therefore requested that permission be granted to remove any safe that cannot be opened by a locksmith on the premises in order to obtain the code and master key to search the interior of the safe.

### Confidential Witness #2 (CW2)

23.     In or about October 2007, I debriefed CW2. CW2 stated that he/she had information regarding Donald REYNOLDS Jr. and his drug and money laundering activities. CW2 stated that

9

REYNOLDS is a large scale marijuana trafficker who gets his marijuana from Arizona. CW2 further stated that REYNOLDS' main drug associate is an individual named Nathaniel "Nugget" Smith. I have independently verified and corroborated the information received from CW2. Examples of some but not all of the methods of corroborating CW2's information is set forth in this affidavit. I believe that CW2 is reliable and the information provided by CW2 is accurate.

24.     CW2 provided information regarding REYNOLDS' purchase of automobiles. CW2 stated that REYNOLDS purchased numerous automobiles from a small used car lot located on Gay Street, Knoxville, Tennessee, named American Exchange. CW2 recalled that REYNOLDS purchased two Cadillac Escalades, a Dodge 300, and a Mercedes Benz 400 series. CW2 stated that REYNOLDS pays for his vehicles in cash that he receives from his drug trafficking activities and that REYNOLDS titles some of his vehicles in the name of his business, Timeless Entertainment, to make them appear legitimate.

25.     CW2 was also aware that "Nugget" was arrested in Chicago for marijuana possession. CW2 stated that REYNOLDS provided "Nugget" with the 2007 Cadillac Escalade that Nugget was arrested in and knew that REYNOLDS had purchased the vehicle from American Exchange.

26.     Based on information obtained from the above informant, your affiant accessed the Tennessee Department of Safety vehicle registration records and was able to obtain current and historical vehicle registration information as it relates to REYNOLDS. Based on information obtained to date, the chart below reflects vehicles REYNOLDS purchased from American Exchange in chronological order. Each transaction will be discussed in further detail below.

10

| Year | Make | Model | VIN | Purchase Date | Purchase Price |
|------|------|-------|-----|---------------|----------------|
| 2002 | Cadillac | Escalade | 1GYEK63N62R101031 | 07/01/2005 | 31,081.50 |
| 2006 | Yamaha | YZFR1 | JYARN15E66A001249 | 12/22/2005 | 11,000.00 |
| 2002 | GMC | Denali | 1GKEK63U32J251341 | 05/15/2006 | 19,500.00 |
| 1996 | Chevrolet | Impala | 1G1BL52P1TR174093 | 07/12/2006 | 8,200.00 |
| 2004 | Infinity | QX56 | 5N3AA08C84N811797 | 10/02/2006 | 34,926.50 |
| 2006 | Dodge | Charger | 2B3KA53H16H344267 | 11/09/2006 | 21,872.50 |
| 2006 | Dodge | 300C SRT-8 | 2C3KA73W76H498298 | 01/26/2007 | 39,500.00 |
| 2007 | Cadillac | Escalade | 3GYFK62827G272799 | 04/02/2007 | 68,075.00 |
| 2004 | Mercedes | S430 | WDBNG83J94A423159 | 11/01/2007 | 41,000.00 |

TOTAL     275,155.50

27.     According to an American Exchange Bill of Sale, on July 1, 2005, Timeless Entertainment Inc., 1001 Crooked Springs Road, Knoxville, Tennessee, purchased a 2002 Cadillac Escalade, VIN #1GYEK63N62R101031, for $31,081.50. The bill of sale is signed by Donald R. REYNOLDS Jr. and he writes his title as "CEO." Across the face of the bill of sale are the words "paid cash."

28.     According to an American Exchange Bill of Sale, on December 22, 2005, Donald Ray REYNOLDS Jr., 1001 Crooked Springs Road, Knoxville, Tennessee, purchased a 2006 Yamaha motorcycle, VIN# JYARN15E66A001249, for $9,832.50. According to State of Tennessee registration records, this motorcycle, bearing tag 8920ZB, is currently registered to Donald Ray REYNOLDS, 1001 Crooked Springs Road, Knoxville, Tennessee, and expires on May 31, 2009.

29.     According to an American Exchange Bill of Sale, on May 15, 2006, Timeless Ent. Inc, 1001 Crooked Springs Road, Knoxville, Tennessee, purchased a 2002 GMC Denali, VIN# 1GKEK63U32J251341, for $19,500.

11

30.    According to an American Exchange Bill of Sale, on July 12, 2006, Timeless Ent. Inc, P.O. Box 52152, Knoxville, Tennessee, purchase a 1996 Chevrolet Impala, VIN# 1G1BL52P1TR174093, for $8,200. Across the face of the bill of sale are the words, "out of state sale."

31.    According to an American Exchange Bill of Sale, on October 2, 2006, Timeless Entertainment Inc., 10623 Alameda Drive, Knoxville, Tennessee, purchased a 2004 Infinity QX56, VIN# 5N3AA08C84N811797, for $34,926.50.

32.    According to an American Exchange Bill of Sale, on November 7, 2006, Timeless Ent. Inc, 10623 Alameda Drive, Knoxville, Tennessee, purchased a 2005 Dodge Charger, VIN# 2B3KA53H16H344267, for $21,872.50. According to the State of Tennessee vehicle registration records this vehicle, bearing tag 386-KJV, was registered to "Timeless Ent I,NC," 10623 Alameda Drive, Knoxville, Tennessee. This registration expired on November 30, 2007.

33.    According to an American Exchange Bill of Sale, on January 26, 2007, Donald R. REYNOLDS Jr., 10623 Alameda Drive, Knoxville, Tennessee, purchased a 2006 Dodge 300C, VIN# 2C3KA73W76H498298, for $39,500. The bill of sale reflects that the sale involved the trade in of the Infinity QX56 discussed above. REYNOLDS received a trade in allowance of $32,500 for the Infinity. According to State of Tennessee vehicle registration records, this vehicle, bearing tag 540-RXM, is currently registered to Donald R. Reynolds Sr., 1001 Crooked Springs, Knoxville, Tennessee, and expires on December 31, 2008.

34.    According to an American Exchange Bill of Sale, on April 2, 2007, Timeless Ent. Inc., P.O. Box 52152, Knoxville, Tennessee, purchased a 2007 Cadillac Escalade, VIN# 3GYFK62827G272799, for $68,075.10. The buyer's signature on the bill of sale reflects the

12

signature of Donald R. REYNOLDS Jr. This vehicle is the same vehicle referred to above in which Nathaniel "Nugget" Smith was arrested in on July 20, 2007, in Chicago for possession of marijuana.

35.     According to an American Exchange Bill of Sale, on November 1, 2007, Timeless Entertainment Inc., P.O. Box 52152, Knoxville, Tennessee, purchased a 2004 Mercedes Benz S430, VIN# WDBNG83J94A423159, for $41,000. The buyer's signature reflects the signature of Donald R. REYNOLDS Jr. and words across the bill of sale reflect, "Going to Texas."

36.     In addition to the vehicles purchased from American Exchange, State of Tennessee vehicle registration records reflect several more vehicles currently registered to, or purchased by, REYNOLDS. A 2005 BMW, VIN# WBAEH73485B869007, bearing tag AP-0462, is registered to Donald R. REYNOLDS Jr., 1001 Crooked Springs Road, Knoxville, Tennessee, and expires on June 30, 2008. A 2006 Lexus, VIN# JTHBK262872049158, bearing tag 674-QGX, is registered to Donald R. REYNOLDS Jr. and Melanie Reynolds, 10623 Alameda Drive, Knoxville, Tennessee, and expires on June 30, 2008. Lastly, a 1996 Chevrolet, VIN# 1G1BL52P7TR194140, bearing tag 81385H1, is registered to "TIMELESS ENTERTAINMENTS INC," 1001 Crooked Springs Road, Knoxville, Tennessee.

37.     According to Bank of America documents received pursuant to a grand jury subpoena, on March 7, 2007, Donald R. REYNOLDS Jr., 10623 Alameda Drive, Knoxville, Tennessee, leased a safe deposit box (number ending xxxxxxx1882), located at the Cedar Bluff Road Branch, 9375 Kingston Pike, Knoxville, Tennessee 37922. The records reflect that REYNOLDS currently leases the box and last entered the safe deposit box on April 5, 2008.

38.     Pursuant to a grand jury subpoena, Bank of America provided bank and credit card records relating to REYNOLDS and Timeless Entertainment, some of which will be discussed in

13

detail below. Based on my analysis of the records obtained, REYNOLDS deposited or made payments of over $550,000 cash in the 15 month span from January 2007 through March 2008. In addition, based on my experience and analysis of many businesses records, I found few, if any, income or expense items that would reflect that REYNOLDS was running any type of legitimate business. Instead, your affiant has probable cause to believe that the cash deposited into these bank accounts was generated solely through REYNOLDS narcotics trafficking.

39.     On February 18, 2003, REYNOLDS opened a Bank of America business economy checking account (number ending xxxxxxxx1977) in the name of Timeless Entertainment Inc. REYNOLDS signed the application Donald R. REYNOLDS, Jr., President. The address utilized to open the account was 1001 Crooked Springs Road, Knoxville, Tennessee 37932. As of March 2008, the address utilized for this account is P.O. Box 52152, Knoxville, Tennessee. Cash deposits into this account total over $530,000, including almost $370,000 cash in the 15 month span from January 2007 through March 2008.

40.     On February 18, 2003, REYNOLDS, opened Bank of America personal checking account (number ending xxxxxxxx7547) in the name Donald R. REYNOLDS, Jr. The address utilized for this account as of March 2008 is 10623 Alameda Drive, Knoxville, Tennessee.

41.     In March 2007, a Bank of America business bank account was opened in the name of Timeless Entertainment, 1001 Crooked Springs Road, Knoxville, Tennessee 37932. In October 2007, another Bank of America business bank account was opened in the name of Timeless Entertainment, 1001 Crooked Springs Road, Knoxville, Tennessee 37932, and was utilizing this address through February 29, 2008, the last statement obtained from Bank of America.

14

42.     According to Bank of America documents received pursuant to a grand jury subpoena, on August 19, 2007, Donald R. REYNOLDS Jr., applied for a Bank of America Visa Card. REYNOLDS indicates on the application that he is the Owner/VP of Sales of Timeless Entertainment located at 1001 Crooked Springs Road, Knoxville, Tennessee. Statements obtained through March 2008, reflect that REYNOLDS is still utilizing the Crooked Springs address for this account.

43.     On February 26, 2007, Donald R. REYNOLDS, Jr., received Bank of America credit card account (number ending xxxxxxxxxxxx5480). The May 31, 2008 statement reflects REYNOLDS address as 10623 Alameda Drive, Knoxville, Tennessee 37932. Cash payments made on this account total almost $70,000 in just over a year.

44.     According to American Express documents received pursuant to a grand jury subpoena, on August 28, 2007, Donald REYNOLDS Jr., applied for two American Express Business credit cards in the name of "Timeless Ent Inc." Both applications utilize the same social security number xxx-xx-3967 and date of birth, and have the identical signature, Donald R REYNOLDS Jr. However, there are also distinct differences.

45.     On the first American Express Application, (account number ending xxxx-xxxxxx-61006), REYNOLDS uses the authorizing officer name of Donald REYNOLDS Jr., home address of 1001 Crooked Springs Road, Knoxville, Tennessee, and email address on a hotmail account.

46.     On the second American Express Application, (account number ending xxxx-xxxxxx-31009), REYNOLDS uses the authorizing officer name of Donald R. REYNOLDS, home address of 10623 Alameda Drive, Knoxville, Tennessee, and email address on a mac account.

15

47. American Express provided statements, but no application, for a third business card, (account number ending xxxx-xxxxxx-71003), obtained in or about October 2007 by REYNOLDS. The statements reflect the owner as Donald R. REYNOLDS Jr., "Timeless Entertainmnt," 1001Crooked Springs Road, Knoxville, Tennessee 37932-3108.

48. I have been participating in this investigation for approximately the last 15 months with Special Agents from the DEA and officers assigned to the High Intensity Drug Trafficking Area (HIDTA) task force with over 40 years of combined narcotics investigating experience. Based upon my training and experience with this and other narcotics and money laundering investigations, combined with the knowledge and information concerning narcotics and narcotics investigations provided by the DEA and officers assigned to HIDTA, I know that:

    a.    Persons involved in drug distribution and its related money laundering activities acquire and maintain records related to drug distribution and records relating to the acquisition and disposition of drug proceeds.

    b.    Drug traffickers commonly profit and amass proceeds from the sale of drugs. In order to protect their illegal activity and be able to utilize their drug profits, they attempt to disguise and legitimize these profits through money laundering activities.

    c.    Drug traffickers often purchase and/or title assets bought with drug proceeds in fictitious names, aliases, names of relatives, associates, or business entities, who serve as "nominee" title holders while the drug traffickers actually own and continue to use the assets and exercise dominion and control over the assets.

    d.    Drug traffickers often engage in legitimate businesses, as a "front" to launder drug proceeds. The business front provides a means for the drug dealer to show that he/she

16

has legitimate income, when in fact; the income is solely from the sale of drugs. Records of such legitimate businesses funded by drug proceeds constitute relevant evidence of money laundering offenses.

e.     Drug traffickers maintain records pertaining to their acquisition, conversion, movement, secreting, transfer, concealment and/or expenditure of drug proceeds, such as: currency, financial instruments and investments, real estate, automobiles, boats, other vehicles, home furnishings, stocks, bonds, precious metals and gemstones, jewelry, electronic equipment and other assets in the form of books, records, invoices, receipts, records of real estate transactions, purchase agreements, automobile titles, bank statements, financial statements, letters of credit, money orders, cashier's checks, safe deposit box agreements and keys, and money wrappers.

f.     Drug traffickers and their associates are known to use aliases, fictitious and multiple addresses, and multiple drivers' licenses and maintain records of the same in order to conceal their true identity and hinder law enforcement investigation of their illegal activity.

g.     Drug traffickers often obtain lines of credit, loans, or mortgages to purchase assets in which they have low equity interest to avoid seizure and forfeiture attempts by law enforcement authorities.

h.     Drug traffickers primarily utilize U.S. currency as the method of conducting their illegal activity. Therefore, drug traffickers often maintain on hand and have quick access to large amounts of U.S. currency or other liquid assets in order to maintain and finance their ongoing narcotics business.

17

i.     Drug traffickers commonly create and maintain books, records, receipts, notes, ledgers, and documents reflecting the names, nicknames, addresses, telephone and pager and other contact numbers of their drug trafficking conspirators, including their sources of supply and their customers; reflecting amounts of money owed and amounts of drugs purchased by customers and amounts of money owed to and amounts of drugs purchased from sources of supply; reflecting transportation to acquire and to sell drugs; reflecting the purchase of drugs, drug packaging supplies, drug paraphernalia and other assets used to facilitate the acquisition and sale of drugs; and reflecting storage facilities and other stash locations to store drugs.

j.     Drug traffickers often utilize electronic equipment such as computers, telex machines, currency counting machines, and telephone answering machines to generate, transfer, count, record, and/or store the information described in the preceding paragraphs.

k.     Drug traffickers use telephones to facilitate their drug activities. Records of such telephone calls, including telephone bills are commonly kept and maintained by the drug traffickers.

l.     Drug traffickers take or cause to be taken photographs or video movies of themselves, their associates, their property and assets, and their product.

m.     Drug traffickers commonly maintain firearms, such as handguns, pistols, revolvers, rifles, shotguns, machine guns, and other weapons in order to protect and secure a trafficker's property.

n.     Drug traffickers are not unlike other individuals in that they maintain historical documents and records such as those documents, records and other items described

18

above. These documents and records will normally be retained for long periods of time regardless of whether their value to the individual has diminished. These documents, records and other items described above are often maintained in the drug trafficker's residences, garages, other outbuildings and appurtenances associated with such residences, and curtilage associated with such residences; automobiles, boats, trailers and other vehicles, safe-deposit boxes, storage facilities, businesses and other locations that are readily available and controlled by the trafficker.

## Conclusion

49. Based upon the facts presented in this affidavit, I have probable cause to believe that DONALD R. REYNOLDS, JR., and others, are involved in a large scale narcotics trafficking and money laundering conspiracy and that evidence of these crimes is being maintained and will be found at the following locations:

a. In the residence located at 10623 Alameda Drive, Knoxville, Tennessee 37932, and its curtilage and outbuildings, appurtenances, and attached and detached garages and vehicles and trailers located on such curtilage as more fully depicted in Attachment A which is attached hereto and made a part hereof;

b. In the residence located at 1001 Crooked Springs Road, Knoxville, Tennessee 37932, and its curtilage and outbuildings, appurtenances, and attached and detached garages and vehicles and trailers located on such curtilage as more fully depicted in Attachment B which is attached hereto and made a part hereof;

c. In the safe deposit box (number ending xxxxxxx1882) located at Bank of America, Cedar Bluff Branch, 9375 Kingston Pike, Knoxville, Tennessee 37922.

19

50.     This evidence includes, but is not limited to: controlled substances; United States currency, automobiles, boats, other vehicles, home furnishings, safes, stocks, bonds, financial instruments and investments, precious metals and gemstones, jewelry, electronic equipment and other assets which constitute the proceeds of the sale of drugs; firearms such as handguns, pistols, revolvers, rifles, shotguns, machine guns and other weapons used to protect drug trafficking activities and drug proceeds; photographs and video movies of drug trafficking activity, drug associates, including both suppliers and customers, controlled substances, drug proceeds, property used to facilitate the distribution of drugs; telephone records reflecting contact with drug suppliers and drug customers; books, records, invoices, receipts, notes, ledgers, and documents reflecting the names, nicknames, addresses, telephone and pager and other contact numbers of drug trafficking conspirators, including sources of supply and their customers, reflecting amounts of money owed and amounts of drugs purchased by drug customers and amounts of money owed to and amounts of drugs purchased from sources of supply of drugs, reflecting transportation to acquire and to sell drugs, reflecting the purchase of drugs, drug packaging supplies, drug paraphernalia and other assets used to facilitate the acquisition and sale of drugs, reflecting storage facilities and other stash locations to store drugs, reflecting the acquisition, conversion, movement, secreting, transfer, concealment, and/or expenditure of drug proceeds such as currency, real estate, automobiles, boats, other vehicles, home furnishings, stocks, bonds, financial instruments, and investments, precious metals and gemstones, jewelry, electronic equipment, and other assets, reflecting aliases, fictitious and multiple addresses, multiple driver's licenses and safe deposit agreements and keys maintained in order to conceal the true identity of the owner of drug proceeds and assets purchased with drug proceeds and drug

20

trafficking activity and reflecting legitimate businesses and business activity to cover and conceal profits made from drug trafficking activity; and reflecting legitimate businesses and business activity to cover and conceal profits made from drug trafficking activity; and electronic equipment such as computers, telex machines, currency counting machines and telephone answering machines to generate, transfer, count, record and or store the information described in the preceding lists, all of which constitute contraband and evidence of the commission of violations of 18 U.S.C. §§ 1956 and 1957, 21 U.S.C. §§ 846 and 841.

FURTHER THIS AFFIANT SAYETH NOT.

Brian D. Grove
Special Agent, Internal Revenue Service
Criminal Investigation

Sworn to before me this _18th_ day of June 2008.

C. CLIFFORD SHIRLEY, JR.
UNITED STATES MAGISTRATE JUDGE
EASTERN JUDICIAL DISTRICT OF TENNESSEE

21

Attachment A

10623 Alameda Drive
Knoxville, Tennessee 37932



A beige, split level single family home with the number 10623 marked on the mailbox pole.
From the interchange of Interstate 40 and Lovell Road, travel north on Lovell Road for
approximately 1.8 miles, turn right onto Alameda Drive and the residence is located
approximately .3 miles on the left.

22

## Attachment B

1001 Crooked Springs Road
Knoxville, Tennessee 37932





A brick front, single family residence with the numbers 1001 on a gold mailbox located at the end of the driveway. From the interchange of Interstate 40 and Lovell Road, travel north on Lovell Road for approximately 0.9 miles, turn left onto Gilbert Drive and proceed 0.5 miles, turn left onto Misty Springs Road and immediately bear right onto Crooked Springs, the residence is the last house on the right.

23

# UNITED STATES DISTRICT COURT

_____EASTERN_____ DISTRICT OF _____TENNESSEE_____

In the matter of the Seizure of a 2006 Dodge 300C, VIN # 2C3KA73W76H498298, registered to Donald R. Reynolds, Sr.

**SEIZURE WARRANT**

MISC. NUMBER: 3:08-

To: Any Special Agent of the Internal Revenue Service and any Authorized Officer of the United States

Affidavit having been made before me by Brian D. Grove, who has reason to believe that in the Eastern District of Tennessee there is now certain property which is subject to forfeiture to the United States, namely a 2006 Dodge 300C, VIN # 2C3KA73W76H498298, registered to Donald R. Reynolds, Sr.

I am satisfied that the affidavit attached hereto and incorporated herein and any recorded testimony establish probable cause to believe that the property so described is subject to seizure and that grounds exist for the issuance of this seizure warrant. Therefore, the United States is authorized to seize the personal property to assure its availability for forfeiture. An order under 21 U.S.C. § 853(e) may not be sufficient to assure the availability of the property for forfeiture.

YOU ARE HEREBY COMMANDED to seize within 10 days the property specified, serving this warrant and making the seizure in the daytime -- 6:00 A.M. to 10:00 P.M., leaving a copy of this warrant and receipt for the property seized, and prepare a written inventory of the property seized and promptly return this warrant to the issuing United States Magistrate Judge as required by law.

_6/18/08    12:15 pm_
Date and Time Issued

at    _Knoxville, Tennessee_
City and State

_C. Clifford Shirley Jr._, United States Magistrate Judge
Name and Title of Judicial Officer

Signature of Judicial Officer

AO 109 (2/90) Seizure Warrant

| RETURN | | |
|---|---|---|
| Date Warrant Received 6/18/08 | Date and Time Warrant Executed 6/19/08 ≈ 6:40am | Copy of Warrant and Receipt for Items Left With Donald Reynolds Sr |
| Inventory Made in the Presence of Phillip Brown | | |
| Inventory of Person or Property Seized Pursuant to the Warrant | | |

2006 Dodge 300
VIN 2C3KA73W76H498298

## CERTIFICATION

I swear that this inventory is a true and detailed account of the property seized by me on the warrant.

Subscribed, sworn to, and returned before me this date.

W. Bruce Hunton,
U.S.M.J.

_____
U.S. Judge or Magistrate Judge

7/10/08

_____
Date